## Case No. 14,692h.

### UNITED STATES v. BURR.[1]

[Coombs' Trial of Aaron Burr, 146.]

Circuit Court, D. Virginia. Aug. 18, 1807.

TRIAL—TREASON—ORDER OF PROOF.

[On the trial of a person indicted for treason in levying war against the United States, the court cannot control the order of proof to the extent of requiring the prosecution to prove the overt act charged before proving the intention with which such act was committed.]

[At law. Trial of indictment of Aaron Burr for treason in levying war against the United States.]

Mr. Hay proceeded to the examination of the evidence on the part of the United States. General William Eaton was sworn, when Mr. Burr objected to this order of examining the witnesses. He said Mr. Hay had not stated the nature of General Eaton's testimony, but he presumed that it related to certain conversations said to have happened at Washington; adding that the propriety of admitting any

1 [For references to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see footnote to Case No. 14,692a.]

other testimony depended on the previous proof of an overt act.

Mr. Hay.—Our object is to prove by him what is contained in his deposition, which has been published. Upon this motion, (to compel the prosecution first to prove an overt act,) a long and animated debate arose, in which Messrs. Botts, Wickham, Lee, and Martin supported the motion, and Mr. Wirt opposed it.

By Colonel Burr's counsel it was urged, that as the charge of treason could not be established without proving an overt act of war, at the place specified in the indictment, the prosecutor should be required to prove an overt act before introducing evidence of intention merely. Why, it was asked, should the prosecutor be permitted to spend days, and perhaps weeks, inquiring into the intentions of Colonel Burr, when it had not been made to appear that such evidence could have any bearing on the case? All such evidence must amount to nothing if the prosecution failed in the end to prove an overt act of war on Blennerhassett's Island; which they must fail to do, because none had been committed. On an indictment for murder, it was said, the prosecutor could not go into evidence of the evil intentions of the accused until the homicide had first been proved, unless that fact was admitted. So in a case of arson, or burglary; the burning or entry of the house must be proved (if denied) before you could introduce evidence of intentions. The argument was pressed with much force and ingenuity, and a number of authorities cited.

In opposition to the motion it was objected that the court had no authority to dictate as to the order in which the prosecution should bring forward their evidence. If competent, and material to the issue, the court could not reject it. Intention being an ingredient of the crime of treason, such evidence was material to the issue, and therefore must be received. The counsel for the prosecution thought that to begin with this evidence was the most lucid way of presenting the transaction to the jury, and they had a right to exercise their own judgment on that point. The most natural and luminous way of proceeding was to commence at the inception of the conspiracy, and trace it, step by step, to its consummation.

At the close of the argument on this motion the court adjourned.

Before MARSHALL, Circuit Justice, and GRIFFIN, District Judge.

MARSHALL, Circuit Justice. Although this is precisely the same question relative to the order of evidence which was decided by this court on the motion to commit, yet it is now presented under somewhat different circumstances, and may, therefore, not be considered as determined by the former decision. At that time no indictment was found, no pleadings existed, and there was no standard by which the court could determine the relevancy of the testimony offered, until the fact to which it was to apply should be disclosed.

There is now an indictment specifying the charge which is to be proved on the part of the prosecution, there is an issue made up which presents a point to which all the testimony must apply, and consequently it is in the power of the court to determine with some accuracy, on the relevancy of the testimony which may be offered.

It is contended in support of the motion which has been made, that, according to the regular order of evidence and the usage of courts, the existence of the fact on which the charge depends ought to be shown before any testimony explanatory or confirmatory of that fact can be received. Against the motion, it is contended that the crime alleged in the indictment consists of two parts, the fact and the intention; that it is in the discretion of the attorney for the United States first to adduce the one or the other, and that no instance has ever occurred of the interference of a court with that arrangement which he has thought proper to make.

As is not unfrequent, the argument on both sides appears to be, in many respects, correct. It is the most useful and appears to be the natural order of testimony to show first the existence of the fact respecting which the inquiry is to be made. It is unquestionably attended with this advantage: there is a fixed and certain object to which the mind applies with precision all the testimony which may be received, and the court can decide with less difficulty on the relevancy of all the testimony which may be offered; but this arrangement is not clearly shown to be established by any fixed rule of evidence, and no case has been adduced in which it has been forced by the court on the counsel for the prosecution. On one side it has been contended that by requiring the exhibition of the fact in the first instance a great deal of time may be saved, since there may be a total failure of proof with respect to the fact; and this argument has been answered by observing that should there even be such failure they could not interpose and arrest the progress of the cause, but must permit the counsel for the prosecution to proceed with that testimony which is now offered. Levying of war is a fact which must be decided by the jury. The court may give general instructions on this as on every other question brought before them, but the jury must decide upon it as compounded of fact and law. Two assemblages of men, not unlike in appearance, possibly may be, the one treasonable and the other innocent. If, therefore, the fact exhibited to the court and jury should, in the opinion of the court, not amount to the act of levying war, the court could not stop the prosecution, but must permit the counsel for the United States to proceed to show the intention of the act, in order to enable the jury to decide upon the fact coupled with the intention. The consumption of time would probably be nearly the same whether the counsel for the prosecution commenced with the fact or the intention, provid-

ed those discussions which respect the admissibility of evidence would be as much avoided in the one mode as in the other. The principal importance which, viewing the question in this light, would seem to attach to its decision, is the different impressions which the fact itself might make, if exhibited at the commencement or close of the prosecution. Although human laws punish actions, the human mind spontaneously attaches guilt to intentions. The same fact, therefore, may be viewed very differently where the mind is prepared by a course of testimony calculated to impress it with a conviction of the criminal designs of the accused, and where the fact is stated without such preparation. The overt act may be such as to influence the opinion on the testimony afterwards given respecting the intention; and the testimony respecting the intention may be such as to influence the opinion on the testimony which may be afterwards given respecting the overt act. On the question of consuming time, the argument was placed in one point of view, by the counsel for the defence, which excited some doubt. The case was supposed of only one witness to the overt act, and a declaration that it could be proved by no other. The court was asked whether the counsel would be permitted then to proceed to examine the intentions of the accused, and to do worse than waste the time of the court and jury, by exposing, without a possible object, the private views and intentions of any person whatever. Perhaps in such a case the cause might be arrested; but this does not appear to warrant the inference that it might be arrested because the fact proved by the two witnesses did not appear to the court to amount to the act of levying war. In the case supposed the declaration of war is positive, and a point proper to be referred to the court occurs, which suspends the right of the jury to consider the subject, and compels them to bring in a verdict of not guilty. In such a case no testimony could be relevant, and all testimony ought to be excluded. Suppose the counsel for the prosecution should say that he had no testimony to prove the treasonable intention; that he believed confidently the object of the assemblage of men on Blennerhassett's island to be innocent; that it did not amount to the crime of levying war—surely it would be a wanton and useless waste of time to proceed with the examination of the overt act. When such a case occurs, it cannot be doubted that a nolle prosequi will be entered, or the jury directed, with the consent of the attorney, to find a verdict of not guilty.

It has been truly stated that the crime alleged in the indictment consists of the fact, and of the intention with which that fact was committed. The testimony disclosing both the fact and the intention must be relevant. The court finds no express rule stating the order in which the attorney is to adduce relevant testimony, nor any case in which a court has interfered with the arrangement he has made. No alteration of that arrangement, therefore, will now be directed. But it is proper to add that the intention which is considered as relevant in this stage of the inquiry is the intention which composes a part of the crime, the intention with which the overt act itself was committed—not a general evil disposition, or an intention to commit a distinct fact. This species of testimony, if admissible at all, is received as corroborative or confirmatory testimony. It does not itself prove the intention with which the act was performed, but it renders other testimony probable which goes to that intention. It is explanatory of, or assistant to, that other testimony. Now it is essentially repugnant to the usages of courts, and to the declarations of the books by whose authority such testimony is received, that corroborative or confirmatory testimony should precede that which it is to corroborate or confirm. Until the introductory testimony be given, that which is merely corroborative is not relevant, and of consequence, if objected to, cannot be admitted without violating the best settled rules of evidence.

This position may be illustrated by a direct application to the testimony of General Eaton. So far as his testimony relates to the fact charged in the indictment, so far as it relates to levying war on Blennerhassett's island, so far as it relates to a design to seize on New Orleans, or to separate by force the Western from the Atlantic states, it is deemed relevant and is now admissible. So far as it respects other plans to be executed in the city of Washington, or elsewhere, if it indicate a treasonable design, it is a design to commit a distinct act of treason, and is therefore not relevant to the present indictment. It can only, by showing a general evil intention, render it more probable that the intention in the particular case was evil. It is merely additional or corroborative testimony, and, therefore, if admissible at any time, is only admissible according to rules and principles which the court must respect, after hearing that which it is to confirm.

The counsel will perceive how many questions respecting the relevancy of testimony the arrangement proposed on the part of the prosecution will most probably produce. He is, however, at liberty to proceed according to his own judgment, and the court feels itself bound to exclude such testimony only as at the time of its being offered does not appear to be relevant.